## AKERS v CHAPLIN

Ohio Appeals, 3rd Dist, Allen Co

No. 756. Decided Feb. 2, 1939

Melvin C. Light, Lima, for plaintiff-appellee.

W. S. Jackson, Lima, M. B. Jenkins, Lima, for defendant-appellant.

## OPINION

**BY THE COURT:**

This is an appeal on questions of law from a judgment of the Common Pleas Court of Allen County, Ohio.

On December 8, 1936, the appellee Samuel M. Akers, who was plaintiff in the Court of Common Pleas, filed a petition against Mrs. Fred Stirn and the appellant Harry P. Chaplin, charging negligence, wilful and wanton misconduct. Thereafter the defendant Mrs. Stirn was eliminated from the case on ruling made on demurrer in her behalf. The petition of the appellee was attacked by various motions and the final pleading upon which plaintiff submitted his case was a second amended petition, to which second amended petition the issues were joined by the defendant with his first amended answer. No reply was filed.

In his second amended petition the plaintiff alleges that at the time he sustained his injuries for which damages are claimed, he was a guest, being transported without payment therefor, in a motor vehicle owned and operated by the defendant Chaplin, and the sole ground of recovery alleged is wanton misconduct of the defendant.

On the issues made by the pleadings, whatever right plaintiff had to maintain the action is based on the provisions of §6308-6, GC, commonly known as the guest statute.

Upon the trial in the Common Pleas Court the jury returned a general verdict in favor of the plaintiff in the sum of forty-five hundred dollars, and judgment was thereafter entered on such verdict, which is the judgment from which this appeal is taken.

The uncontroverted facts as shown by the record are that on September 2, 1936, the defendant was the owner and operator of a 1936 DeSoto five-passenger sedan with four doors; that about noontime on September 2, 1936, the de-

fendant, operating the car, seated on the front seat on the left side, with one Woodrow Anderson seated on the front seat on the right side, the plaintiff, Samuel M. Akers, sitting in the rear seat on the right side and one Hyman Katz seated in the rear seat on the left hand side, started from the Public Square or the Kirwin Hotel in Lima, Ohio, to go to Payne, Ohio, choosing State Route No. 115 as the way of travel. Shortly after he started it was discovered that no one in the car had a key to the storeroom at Payne, Ohio, whereupon they returned to the Public Square and obtained the key and started again for Payne, Ohio. Plaintiff and defendant were connected with the United Mercantile Company as partners or upon a salary and percentage basis. Woodrow Anderson was an employe and Hyman Katz was a prospective purchaser for a stock of goods located at Payne, Ohio. The United Mercantile Company was engaged in the purchase and sale of depressed stocks of merchandise, and the object of the visit to Payne, Ohio, was to prepare the merchandise, which consisted of furniture, for sale, either by auction or otherwise.

The injuries to plaintiff occurred at the intersection of Route No. 115 and a highway known as the West Road, abount four or five miles north of Vaughnsville, Ohio, on State Route No. 115, and being about fifteen or sixteen miles north of Lima, Ohio, on said route.

At and preceding the collision a Mrs. Fred Stirn was driving a Ford V-8 automobile to the rear of which was attached a two wheel trailer, in a northerly direction along said State Route 115 toward the intersection of said route with the West Road. She lived approximately one-half mile west of Route No. 115, on the West Road and expected to turn left from Route 115 on to the West Road if the collision had not occurred. The defendant, Harry P. Chaplin, was also driving in a northerly direction on said Route 115 toward said intersection with the West Road, to the rear of the automobile driven by Mrs. Stirn.

The day was bright and the sun was shining and the pavements of both roads were dry. The West Road is a hard bound black macadam road about fifteen feet in width and intersects Route 115 on the level on both sides and at almost absolutely right angles.

State Route 115 for one and one-half miles south and one and one-half miles north of its intersection with West Road is straight and level and consists of an eighteen foot hard cement surface with a black line in the center thereof, and on each side of the eighteen foot cement pavement is a solid berm from eight to ten feet wide, the berm being wide enough for an automobile to pass on either side of the concrete strip. Beyond the berm were shallow ditches except just at the southwest corner of the intersection of Route 115 and the West Road, where the ditch is probably one and one-half to two feet deep. On Route 115 there are no signs on either side of the road or north and south of the intersection with the West Road which indicated an intersection. The only signs are two iron standards with the usual State of Ohio insignia and the numbers 115 thereon.

The Ford automobile and trailer of Mrs. Stirn was moving approximately twenty to twenty-five miles per hour on Route 115 in the middle of the road and veering to the right or east side when the defendant attempted to pass on the left or west side of the road.

The front half of the automobile of the defendant had passed the trailer and was alongside of the Ford automobile when suddenly the left front corner of the two-wheel trailer struck the automobile of the defendant either on the panel between the front and back doors on the right hand side, or further in the rear, causing the trailer to run off the road on the west side thereof, the automobile of the defendant to turn over and land on its side in the intersection of Route 115 and the West Road, practically half the car being on the cement pavement of Route 115 and half on the macadam of the West Road. The Ford automobile of

Mrs. Stirn continued north and stopped on its wheels without turning over or leaving the road just north of the intersection on the right hand or east side of Highway No. 115. There was no other traffic on the highway before or at the time of the collision.

The plaintiff as a result of the collision received a number of cuts and bruises but his chief injury was to his right leg below the knee. Both bones were badly broken; he was in the hospital seventy-five days during which time his leg was operated upon by a Doctor Tillotson three times under an anesthetic, the operations being designated by the doctor as major operations. After leaving the hospital he was compelled to go about on crutches, later two canes and then one cane. At the time of the trial he was using one cane part of the time. The leg is slightly shortened occasioning a limp. He still undergoes pain and suffering. The leg is badly scarred from the incisions made in connection with the operations. His immediate medical hospital expense was almost one thousand dollars.

Plaintiff for at least six months before the collision was engaged on salary, when working, of thirty-five dollars a week and ten per cent of the profits, but there were little, if any, profits.

The evidence as to the speed at which defendant's car was being operated at and prior to the time of the collision is conflicting. One witness testified that the speed did not exceed fifty miles per hour prior to the time the Stirn car was observed, and was reduced to forty miles per hour just prior to the collision. The defendant testified that the highest rate of speed at which he was traveling at any time was fifty miles per hour and that he slowed down to pass the Ford car. Another witness testified that just prior to the accident the speed was from seventy to seventy-five miles per hour; and the plaintiff testified the speed was eighty miles per hour just prior to the collision.

There is also a conflict in the testimony as to whether the plaintiff complained of the speed prior to the collision.

A Mr. Woodrow Anderson who was riding in the car, testified that there were no complaints about speed by anybody in the car, including the plaintiff, and the plaintiff testified that no complaint was made by Katz or Akers or anybody else about the speed. On the other hand, Mr. Katz testified about such complaints, as follows:

"Q. What was the conversation between him (Chaplin) and Mr. Akers? A. In reference to his driving.

Q. What did Mr. Akers say? A Mr. Akers cautioned him, asked him if he wouldn't quit driving that way to stop and let him out,—let him get out of the car.

Q. How many times did Mr. Akers say that? A. At least on three or four different occasions.

Q. Did he respond to Mr. Akers request by saying something? A. Yes, he says 'Oh, go to hell.'"

The plaintiff testified as follows:

"A. He (Harry P. Chaplin) was driving about eighty miles an hour and I cautioned him against the speed he was driving.

Q. Do you remember what you said to him? A. I told him that I didn't want to drive in a car at that rate of speed, that it wasn't necessary.

Q. Do you remember whether you did that once or more than once? A. I did it several times.

Q. What response did he give you to your remarks, Mr. Akers? A. Told me to go to hell.

Q. Now, as you drove, you drove through Vaughnsville and went on north? A. Yes sir.

Q. Does the road go through Vaughnsville, or to the edge of the town? A. Goes directly through Vaughnsville, north.

Q North of Vaughnsville you may describe what happened, Mr Akers? A. We were driving along at this ex-

cess speed, which I cautioned him against, and naturally I couldn't do anything about it, I was in the back seat—

Mr. Jackson: Well, we object. The Court: Yes, 'naturally I couldn't do anything about it' may be stricken.

Q. Go on, Mr. Akers? A. Going at this terrific rate of speed of around eighty miles an hour, after we were some distance out of Vaughnsville there was a car ahead of us with a trailer, and being that we were going this fast as we were, why, I naturally was frightened—"

Both the witness Anderson and the defendant denied that the defendant made any remark to the plaintiff similar to "Go to hell."

With reference to the events immediately preceding the collision, the defendant testified as follows:

"Q. Now, within a mile and a half of this intersection what was the highest speed at which your automobile was traveling,—you were driving?

A. Yes sir, around fifty miles an hour.

Q. And when did you first see the automobile and two-wheel trailer ahead of you?

A. Oh, I took notice of that possibly a mile ahead of me.

Q. And on which side of the road were your traveling?

A. On the right side of the road.

Q. And going in which direction?

A. North.

Q. Which side of the road was the automobile,—the Ford V-8 and the two-wheel trailer traveling?

A. Also on the right hand side going north.

Q. Now, describe your movements from that time on until the time of the collision, Mr. Chaplin?

A. Why, we were busy talking, as I say,—listening back there to what is going on, and all in pretty fair humor going out,—was driving along, it was a nice day, just practically loafing along, there was no hurry at all; and I drew up on this woman and as I got near I blew the horn, just ready to pass her,—that was about possibly, I would say two hundred feet,—she was still on the right side, then she pulled out to the center of the road, so I thought I would pass her,—I thought she was going to stay over there and I would pass her on the other side, on the rough road,—that is, off of the center of the road,—and I blew the horn again and that is possibly where I made a mistake, because she turned back and I had to jerk the wheels around to pass around her left and while my front cleared, her left front of her trailer, right the corner of it, was sticking out, zig-zagging across the road, and that struck the rear of my car,—that is, about the center of the panel between the two doors and naturally it rolled me over.

Q. How far did you travel after the actual impact and collision?

A. About fifty feet?"

The plaintiff testified as follows, as to the events immediately preceding the accident:

"A. He (Chaplin) was driving about eighty miles an hour and this car was ahead of us, with a trailer, and from all appearances this party who was driving was making preparations for a left hand turn; a short distance from this particular cross-road, I would say possibly in the neighborhood of around a hundred feet or so,—a hundred and fifty feet,—he attempted to go around her right,—from appearances it seemed as though he wanted to get around to the rght of the car and couldn't do that, as the party who was ahead of us started going to the right, and evidently he lost control of the car; and in trying to pass this car on its left side,—this car with the trailer,—I was sitting in this back seat where I had to have my leg straddled over the amplifier which we were taking along with us to Payne, Ohio, and this amplifier was setting in between my legs and my right leg was up against the rear right door of this DeSoto sedan; and just with that, why, we crashed right into

the end of this trailer; just where we crashed I am not in a position to tell you, I don't know; and I know we rolled over possibly,—I know it was at least two times, and slid on the side of the car * * *"

There is evidence tending to prove that the defendant in driving his car for some time preceding the accident was swerving from one side of the road to the other, which is controverted. There is also evidence that the trailer attached to the Ford car driven by Mrs. Stirn ahead of defendant's car was wobbling and bouncing from one side to the other of the road.

There is a conflict in the evidence as to whether the horn was blown by defendant prior to the time of the collision to warn Mrs. Stirn that defendant was approaching and about to pass. Woodrow Anderson testified the horn was blown twice at intervals of about one hundred feet. The defendant testified he blew the horn twice at intervals of about one hundred feet. One Billy Parsons says he heard the horn blown once which came from the Chaplin car. Hyman Katz says the horn was not blown. The plaintiff says he has no recollection of the horn being blown.

The defendant-appellant assigns errors as follows:

1. Appellant assigns as error that the judgment is against the weight of evidence and is contrary thereto; that the judgment is contrary to law; and the judgment is not sustained by sufficient evidence.

2. Error was committed by the court in his failure to direct a verdict at the close of the evidence of the plaintiff and at the close of all of the evidence, and for overruling of the motion for a new trial.

3. That the court erred in the admission of evidence over the objection and exceptions of this appellant who was defendant below.

4. The court erred in the exclusion of evidence offered by the appellant, who was defendant below.

5. That the court erred in its charge to the jury.

6. That the court erred in refusing to charge the jury as requested by the appellant, who was defendant below.

7. That the amount of recovery as found was rendered under the influence of passion and prejudice.

8. The charge of the court.

9. The amount of recovery is excessive.

These assignments of error will be considered in the order mentioned except that that part of the first assignment to the effect that the judgment is contrary to law which as argued in appellant's brief is limited to claims that the second amended petition does not state a cause of action, and the judgment is not sustained by any evidence, and the second assignment, that error was committed by the court in his failure to direct a verdict at the close of the evidence of the plaintiff and at the close of all the evidence will be considered together, as they relate to the same subject matter; and that part of the first assignment that the judgment is against the weight of the evidence and is contrary thereto and is not sustained by sufficient evidence, will next be considered; and that part of the first assignment as to error in the overruling of the motion for new trial will be considered after all the assignments of error are considered.

The defendant contends that the judgment is contrary to law and the motions made by the defendant for a directed verdict in his favor at the close of plaintiff's evidence and at the close of all the evidence should have been granted for the reason that there is no evidence to sustain the verdict upon the issue of wanton misconduct.

In his brief, defendant states that a perusal of the record and pleadings will disclose that the second amended petition does not state a cause of action, but from the record it appears that the second amended petition was not attacked either by motion or demurrer in this respect, nor was motion or objection made to exclude evidence

from the jury on the ground of insufficiency of the second amended petition, nor was the question of the insufficiency of the second amended petition otherwise raised by the defendant on the trial of the cause.

In this situation the defendant may not for the first time object to the insufficiency of the petition in this reviewing court, if the evidence supports the judgment. **North Electric Manufacturing Company v Shelley, 32 Oh Ap 379.**

The determination of this question which relates exclusively to the allegation of wanton misconduct of the defendant, is comprehended in the determination of the next question which is whether there is any substantial evidence to sustain the verdict upon the issue of wanton misconduct of the defendant.

In the latest decision of the Supreme Court on the subject, **Universal Concrete Pipe Company v Bassett, 130 Oh St 567,** it is held in the second paragraph of the syllabus that:

"Wanton misconduct is such conduct as manifests a disposition to perversity, and it must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be conscious, from his knowledge of the surrounding circumstances and existing conditions, that his conduct will in all common probability result in injury."

The evidence of the defendant himself in this case tends to prove the defendant took notice of the automobile and trailer with which he afterward collided, while the same was possibly a mile ahead of the automobile he was driving, and that at the time of and preceding the collision he had knowledge of the surrounding circumstances and existing conditions, and there is other evidence tending to prove that for some time prior to and at the time of the collision the defendant was driving his automobile at a speed which was prima facie unlawful, and that the plaintiff several times, at least on three of four different occasions, protested against, admonished and cautioned him as to the speed at which he was driving and asked him if he wouldn't quit driving that way, to stop and let him (plaintiff) out, let him out of the car; and that in response to these protests, admonitions, cautions and requests the defendant replied, "Oh, go to hell."

This evidence tended to prove conduct on the part of the defendant manifesting a disposition to perversity in ignoring the protests, admonitions and cautions of the plaintiff as to the excessive speed at which the defendant was driving, and also in denying the legal right of the plaintiff to have the defendant stop the car and let him out, the denial of this right constituting in contemplation of law a trespass against the person of the plaintiff, to-wit, an imprisonment. For as stated in 11 R. C. L. page 793,

"Any exercise of force, or expressed or implied threat of force, by which in fact the other person is deprived of his liberty, compelled to remain where he does not wish to remain, or go where he does not wish to go, is an imprisonment."

From the evidence of the repetition of the protests, admonitions, cautions and requests of plaintiff and from other facts in evidence, as to the order of occurrance of events preceding the collision, it may be inferred the same occurred at such time or times prior to the collision that if the defendant had not ignored them the collision and plaintiff's injuries resulting therefrom could have been avoided. **Berman v Berman, Supreme Court of Connecticut, 147 Atlantic Reporter, 568.**

Defendant's own knowledge of the presence of the automobile and trailer ahead, with the surrounding circumstances and existing conditions, as testified to by him, together with the knowledge brought to his attention by the protests, admonitions, cautions and requests of plaintiff, tended to prove

his consciousness, from his knowledge of such surrounding circumstances and existing conditions, that his conduct would in all common probability result in injury.

There was evidence, therefore, to sustain the verdict of the jury on the issue of wanton misconduct of the defendant, and the judgment is not contrary to law by reason of the second amended petition not stating a cause of action or by reason of not being sustained by any evidence and the court did not err in refusing to direct a verdict in favor of defendant.

2. While there are sharp conflicts in the evidence, there is competent, credible and susbstantial evidence tending to prove every essential fact necessary to sustain the verdict, and the verdict is not against the weight of the evidence.

3. While the defendant-appellant makes an assignment that the court erred in the admission of evidence, over the objections and exceptions of the defendant, he fails to point out any evidence in the bill of exceptions to which this assignment is directed. No such evidence being pointed out, the court will not consider this assignment of error.

4. The fourth assignment of error is that the court erred in the exclusion of evidence offered by the defendant, but defendant's brief does not point out any evidence in the bill of exceptions to which this complaint is directed and consequently this assignment will not be considered.

5. The fifth assignment is that the court erred in its charge to the jury. The complaint as to the charge is on two items. First, that the court failed to distinguish between the words "guest" and "passenger". Second, that the court in its charge recited that the plaintiff claimed to have made a request to reduce the speed of driving to a rate of safety. And there is a further contention that the entire charge of the court is confusing, whereby the jury could not discern and determine the difference between misconduct and negligence.

As to the first item, the brief does not recite the language in the charge where it is claimed the court failed to distinguish between the word "guest" and the word "passenger", but taking the charge as a whole the law applicable to a "guest" is correctly stated and applied, and in this situation the failure to distinguish between "guest" and "passenger" was not in any way prejudicial to the defendant.

As to the second item above mentioned, appellant claims that there is no evidence warranting the recital by the court in its charge that the plaintiff claimed to have made a request to reduce the speed of driving to a rate of safety. We have heretofore quoted such evidence in this opinion which warranted the court in making such recital in its charge.

As to the third contention, that the entire charge of the court is confusing, whereby the jury could not discern and determine the difference between wanton misconduct and negligence, we have examined the charge and find that the case was submitted solely on the issue of wanton misconduct and not on negligence, and the court accurately stated the law applicable to the issues, and that the charge was not confusing. The fifth assignment of error is therefore without basis.

6. The sixth assignment of error is that the court erred in refusing to charge the jury as requested by the defendant.

The defendant in this case made seven special requests. Requests numbers 1, 2 and 3 were objected to by the plaintiff, and the objection sustained to numbers 1 and 3. Numbers 4, 5 and 6 were submitted without objection. Number 7 was objected to because it constituted a repetition of number 5, not objected to. The requests to which objections were sustained, read as follows:

No. 1.

"Ladies and Gentlemen of the Jury: I charge you, as a matter of law, that wanton misconduct is more than neg-

ligence, even more than gross negligence, because negligence does not have for its base either wilfulnss or wantonness."

No. 3.

"Ladies and Gentlemen of the Jury: I charge you as a matter of law, that, although the operator of a car may be guilty of negligence and overconfidence in the operation of his car, he is not guilty of either wilful or wanton misconduct within the meaning of the so-called guest statute, namely, §6308-6, GC of the State of Ohio."

No. 7.

"Ladies and Gentlemen of the Jury: I charge you, as a matter of law, that excessive speed in the operation of an automobile is not of itself sufficient to constitute an act of wantonness."

Request No. 5, which was given without objection, reads as follows:

"Ladies and Gentlemen of the Jury: I charge you as a matter of law, that if you find that, prior to the time of the collision and at the time of the collision, the automobile of the defendant was being operated at an excessive rate of speed, such excessive rate of speed is not of itself sufficient to constitute an act of wantonness."

In the opinion in the case of **Universal Concrete Pipe Company v Bassett, 130 Oh St 567**, it is stated that although actions for wilful misconduct have often been treated under the head of negligence actions, an action based upon wanton or wilful misconduct is apart from the action for negligent conduct, and the difference is one of kind, not merely of degree; and that negligence does not have for its base either wilfulness or wantonness while misconduct which is merely negligence, is never either wilful or wanton.

Applying this rule to Request No. 1, the difference between wanton misconduct and negligence being in kind and not in degree that part of the request stating that wanton misconduct is more than negligence, even more than gross negligence, was an incorrect statement of the law as it indicates a difference in degree rather than kind, and being incorrect was properly refused by the court.

Request No. 3 was also properly refused. The effect of the request being to charge the jury that if the operator of a car is guilty of negligence and overconfidence, he, as a matter of law, is not guilty of either wanton or wilful misconduct. The premise does not justify the conclusion, as an operator could be guilty of negligence, overconfidence and also wanton misconduct. Had the request stated that the operator could be guilty of negligence and overconfidence and yet not be guilty of wanton misconduct, it would have been a correct statement of the law.

Request No. 7 was also properly refused, as the substance of the request was stated in Request No. 5, submitted without objection, and defendant was not entitled to have it repeated in another requested instruction.

The seventh assignment of error is that the amount of recovery as found was rendered under the influence of passion and prejudice.

From appellant's brief it appears that his contention is under this assignment of error, that counsel for plaintiff in examining the jurors inquired as to personal interest in any insurance company. No objections were made to any questions propounded in the preliminary examination of jurors by counsel for plaintiff so there is no foundation for this claim of error. The only direct statement concerning insurance, appearing in the record, was made by the defendant himself in response to a question in direct examination by counsel for the defendant, and the defendant is precluded from claiming any error in this respect. Upon examination of the record we find nothing to indicate that the amount of recovery as found was entered under the influence of passion and prejudice.

8. Assignment number eight is the charge of the court. This is a repetition of assignment number five which we have already discussed and found to be without basis.

9. The ninth assignment of error is that the amount of recovery is excessive.

It is contended by the defendant that the evidence failed to show an earning capacity of the plaintiff at the time of the accident sufficient to warrant the recovery of forty-five hundred dollars, the amount of the verdict of the jury, but when the extent of plaintiff's injuries are taken into consideration, the four major operations which he was subjected to under an anethetic, and the nature of the disability resulting from the injury, as shown by the evidence, we do not find that the verdict is excessive.

The assignments of error incorporate all the grounds of the motion for new trial filed in the Common Pleas Court, and as there was no error in any of the particulars mentioned, as we have found on an examination of such assignments, the trial court did not err in overruling the motion for new trial.

As for the reasons above mentioned we find no error in any of the particulars assigned and argued in appellant's brief, the judgment of the Common Pleas Court will be affirmed at costs of appellant.

GUERNSEY, PJ., CROW & KLINGER, JJ., concur.